2000 ME 42

**GREEN TREE FINANCIAL CORP.**

v.

**Jeannine L. PATTEN et al.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 1999.

Decided March 3, 2000.

Robert M. Neault (orally), Todd H. Crawford Jr., Robert M. Neault & Assoc., P.A., Naples, for plaintiff.

Paul C. Fournier (orally), Lewiston, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Green Tree Financial Corporation appeals from a judgment entered in the

District Court (Lewiston, *Beliveau, J.*) on a foreclosure action brought by Green Tree against Jeannine and Arthur Patten. The District Court's judgment estopped Green Tree from proceeding with the foreclosure against the Pattens based on their failure to make mortgage payments. It also estopped Green Tree from requiring that the Pattens make monthly mortgage payments owed to Green Tree that have or will become due after Jeannine became physically disabled in 1995. Finally, the court concluded that Green Tree violated the provisions of the Maine Consumer Credit Code—Truth–in–Lending Act, entitling the Pattens to a $4000 setoff against any future payments that become due and payable to Green Tree. Green Tree contends that the trial court made several substantive evidentiary and procedural errors in its decision. We do not reach those contentions, however, because Green Tree failed to perfect its appeal in a timely manner pursuant to M.R. Civ. P. 73(a). Accordingly, we dismiss the appeal.

[¶ 2] In 1994, the Pattens purchased land and a mobile home in Sabattus, Maine. To finance the purchase, they executed a mortgage, a promissory note, and a security agreement in favor of Green Tree. The disclosure statement provided at the closing indicated that credit life and credit disability insurance were not required and would not be provided unless the Pattens indicated in writing that they desired the coverage and that they agreed to pay the additional cost. Neither Patten signed to indicate that they desired insurance. The Pattens, however, did sign a separate document entitled "Election for Voluntary Lifeline Protection" indicating that they wanted joint credit life insurance.[1] Jeannine later received documentation indicating that she was in fact covered by credit life insurance, but she canceled the life insurance policy because it did not provide coverage for Arthur. She did not receive any documentation indicating that she was covered by credit disability insurance.

[¶ 3] The Pattens made regular monthly payments on their obligation. On January 10, 1995, Jeannine was seriously injured in a car accident. She could not return to work and now collects social security payments as a result of her disability. Jeannine notified Green Tree of her disability, but Green Tree informed her that she was not covered by disability insurance and was liable for each monthly payment.

[¶ 4] The Pattens continued to make monthly mortgage payments through March of 1996. After the Pattens failed to make their April payment, Green Tree sent them a notice of default and right to cure letter. When the Pattens failed to make reinstatement payments on the mortgage, Green Tree filed a complaint for foreclosure in the District Court. In their answer, the Pattens raised the affirmative defenses of promissory and equitable estoppel. In addition, on the day of trial, the trial court granted the Pattens' motion to add a third affirmative defense. By that defense, the Pattens alleged that Green Tree had violated the Consumer Credit Code by failing to disclose the cost of the credit life insurance in the agreement. *See* 9–A M.R.S.A. § 8–208 (1997). The Pattens contended that Green Tree's violation of the Consumer Credit Code entitled them to a setoff against any monetary amount that Green Tree might recover from them.

[¶ 5] At trial, Jeannine testified that she was led to believe that credit disability insurance was included in the agreement, that she believed she had purchased such insurance at the September 1994 closing, and that she believed the monthly payments for the insurance were included in the mortgage payment.

---

**1.** The cost of the premiums for the credit life insurance was not included on the disclosure statement.

[¶ 6] The trial court issued its decision, styled as "Findings, Conclusions, and Orders," on December 5, 1997. It found that "the testimony of Jeannine Patten [was] credible," and that Jeannine "was led to believe that during the signing of all of the documents she was covered by disability insurance." The trial court concluded that the Pattens had "sustained their burden of proof by a preponderance of the evidence concerning both promissory and equitable estoppel," and that Green Tree was estopped from enforcing the Pattens monthly mortgage payment obligations as long as Jeannine remains disabled.[2] The trial court also held that Green Tree had violated the Consumer Credit Code, and the court awarded $2000 to each of the Pattens "as the setoff" against any award later obtained by Green Tree. Pursuant to provisions of the Consumer Credit Code, the court also directed that the Pattens attorney submit an affidavit of attorney fees.[3] See 9-A M.R.S.A. § 8-208(1)(C) (1997).

[¶ 7] On December 17, 1997, Green Tree filed a notice of appeal, but that notice specified that the Superior Court was the court to which the appeal was taken. Pursuant to the notice of appeal, the case was forwarded to the Superior Court.

[¶ 8] On March 16, 1998, Green Tree made a motion in the Superior Court that the case be remanded to the District Court. On April 2, 1998, the Superior Court (Androscoggin County, Delahanty, J.) remanded the case "to the District Court for entry of final judgment or further proceedings as may be appropriate."

Because 14 M.R.S.A. § 1901(2)(A) (Supp. 1999) requires that appeals from judgments in foreclosure actions be taken directly to the Law Court, the Superior Court has no jurisdiction over such appeals.[4] See id.

[¶ 9] On April 9, 1998, the trial judge ordered the clerk of the District Court to enter a final judgment in the case, and the docket reflects the entry of a final judgment. On June 17, 1998, Green Tree requested a hearing on its motion for clarification and amendment of judgment that had been filed in the District Court on March 19, 1998. On June 30, the trial court denied the request because it had already entered a final judgment in the case. Green Tree claims that it was only on June 30 that it learned of the April 9, 1998 docket entry. On August 12, 1998, Green Tree filed a notice of appeal to the Law Court and a motion for an enlargement of time in which to file an appeal to the Law Court.

[¶ 10] On December 14, 1998, the trial court granted Green Tree's motion for an enlargement of time to file an appeal to the Law Court.[5] Eight days later, Green Tree filed its final notice of appeal.

[¶ 11] In a foreclosure action, "[a] party must appeal from a District Court judgment ... directly to the Supreme Judicial Court within 30 days of the judgment." See 14 M.R.S.A. § 1901(2)(A) (Supp.1999). "Any such appeal shall proceed in accordance with the provisions of Rule 73 through 76A of [the Maine Rules of Civil

2. Green Tree contends, inter alia, that the testimony of Jeannine, on which the court based its finding of estoppel, should have been excluded pursuant to the parol evidence rule because it contradicted the integrated contract and security agreement. See Handy Boat Serv., Inc. v. Professional Servs., Inc., 1998 ME 134, ¶¶ 10–11, 711 A.2d 1306, 1308–09. Furthermore, Green Tree contends that the court erred by failing to apply a clear and convincing evidence standard of proof to the Pattens estoppel claims. See Littlefield v. Adler, 676 A.2d 940, 942 (Me.1996).

3. On January 16, 1998, the trial court further ordered Green Tree to pay $2100 toward the Pattens' attorney fees.

4. Title 14 M.R.S.A. § 1901(2)(A) (Supp.1999) provides: "A party must appeal from a District Court judgment in an action of foreclosure and sale directly to the Supreme Judicial Court within 30 days of the judgment." See id.

5. The trial court also denied Green Tree's motion for clarification and amendment of judgment.

Procedure]." M.R. Civ. P. 76I. Rule 73(b) describes how a party may appeal from a judgment:

> Any party may appeal from a judgment by filing a notice of appeal with the clerk. The notice of appeal shall specify the parties taking the appeal and shall designate the judgment or part thereof appealed from.

M.R. Civ. P. 73(b). Strict time limits are placed on the parties seeking appeal:

> The time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that: (1) upon a showing of excusable neglect the court in any action may extend the time for filing the notice of appeal not exceeding 30 days from the expiration of the original time herein prescribed.

M.R. Civ. P. 73(a).

[¶ 12] Green Tree argues that its notice of appeal filed on December 17, 1997, twelve days after the entry of judgment, was effective even though it directed the appeal to the Superior Court and not to the Law Court. Green Tree contends that it filed the notice of appeal within 30 days and that Rule 73(b) does not require Green Tree to state the court to which it is appealing.

■ [¶ 13] Statutory construction is an issue of law which this court reviews de novo. *See Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523, 524. The same is true for construction of the Maine Rules of Civil Procedure. *See generally McNamara v. Elbthal*, 515 A.2d 747, 748 (Me. 1986).

■ [¶ 14] Rule 73(b) does not *explicitly* provide that the name of the court to which an appeal is taken be included in the notice of appeal. When the notice of appeal contains the name of the *wrong court*,

however, resulting in the appeal being forwarded to the wrong court, the appeal period is not tolled. The purpose of Rule 73 is to cause judgments to become final and to allow execution and other enforcement of those judgments "within a brief, fixed time period after their entry." *See Town of S. Berwick Planning Bd. v. Maineland, Inc.*, 409 A.2d 688, 690 (Me. 1980). This is especially true in foreclosure proceedings where the legislature sought to avoid delay by "providing for a direct appeal to the Law Court." *See McNamara*, 515 A.2d at 749.

■ [¶ 15] The District Court entered its judgment on December 5, 1997. On March 19, 1998, Green Tree filed a motion for clarification and amendment of judgment in the District Court. In its motion, Green Tree contended that the court's ruling failed to determine whether Green Tree was "entitled to foreclosure on the property itself while still being precluded from asserting any claims for repayment of the underlying obligation." Green Tree argues that because foreclosure could have been ordered for failure to make tax and insurance payments, the December 5, 1997 order did not dispose of all possible grounds for foreclosure and cannot be a final judgment. Neither the complaint nor the motion for clarification and amendment, however, raised the issue of nonpayment of taxes and insurance as grounds for foreclosure. Furthermore, the focus of the trial was on the failure to make the mortgage payments, and Green Tree presented no evidence of the Pattens' failure to make tax and insurance payments. Accordingly, the December 5, 1997 order was the final judgment in this case.[6]

■■ [¶ 16] After filing a notice of appeal to the Superior Court on December 17, 1997, Green Tree did not file an effective notice of appeal until August 12, 1998. That notice of appeal was untimely as it

---

6. The trial court awarded attorney fees to the Pattens in a January 16, 1998 order. That order does not affect the finality of the December 5, 1997. *See* M.R. Civ. P. 54(b)(2)

(stating that claim for attorney fees does not affect the finality of a judgment unless the court makes an express finding otherwise).

was filed well beyond the 30 day time limit established in 14 M.R.S.A. § 1901(2)(A) (Supp.1999).[7] Nor did the trial court have the authority to grant Green Tree's motion for enlargement of time to file an appeal to the Law Court that was also filed on August 12, 1998. Rule 73(a) provides that "upon a showing of excusable neglect, the court ... may extend the time for filing the notice of appeal *not exceeding 30 days from the expiration of the original time herein prescribed.*" M.R. Civ. P. 73(a) (emphasis added). We have held that Rule 73(a) provides the exclusive mechanism for enlarging the time to file a notice of appeal, thereby prohibiting further extensions pursuant to M.R. Civ. P. 6(b). *See Lussier v. Oxford Dev. Assocs.*, 1997 ME 117, ¶ 5, 695 A.2d 1188, 1189–90. Because the motion for enlargement was filed more than 60 days after the entry of final judgment, the District Court erred in granting the extension. *See* M.R. Civ. P. 73(a).[8]

[¶ 17] To allow Green Tree's appeal to this Court, the notice of which was filed eight months following the entry of judgment, and four months following the additional entry of judgment made at the court's direction, would frustrate the legislative intent of avoiding delay in reviewing foreclosure judgments. *See* 14 M.R.S.A. § 1901(2)(A) (Supp.1999). Accordingly, the appeal of Green Tree must be dismissed.

The entry is:

Appeal dismissed.

SAUFLEY, J., with whom Dana J., joins, concurring.

[¶ 18] I concur in the judgment of the Court, but disagree with the Court's conclusion that the failure to recite the correct court to which the appeal is taken renders a notice of appeal a nullity. Thus, I write separately.

[¶ 19] After considerable procedural confusion, and after remand from the Superior Court, the District Court directed entry on the docket that judgment was "final" on April 9, 1998. Therefore, regardless of the nature of the previous actions of the court, the appeal period again began to run from the date of that entry of judgment, and Green Tree was obliged to file its appeal within thirty days of the entry of final judgment in order to comply with M.R. Civ. P. 73(a). Because it failed to do so, Green Tree's appeal must be dismissed. Thus, I agree with the Court's result.

[¶ 20] The Court, however, has addressed itself to the notice of appeal filed December 17, 1997, appealing the December 5, 1997, judgment, and has determined that the December appeal was ineffective because it incorrectly identified the Superior Court as the court of appeal. I would conclude that the filing of a notice of appeal, even when the notice references the wrong forum to which the appeal will be taken, is sufficient to meet the requirements of Rule 73(b).[9] *See* M.R. Civ. P. 73(b). Rule 73 is quite specific in its requirements, and nothing in those require-

7. Green Tree's March 16, 1998 motion for clarification and amendment did not toll the appeal period pursuant to Rule 59. Though a timely motion for amendment of judgment pursuant to M.R. Civ. P. 59 will terminate the running of the time for appeal, *see* M.R. Civ. P. 73(a), Green Tree's motion was not timely as it was filed more than 90 days after final judgment was entered, *see* M.R. Civ. P. 59(b) ("A motion for a new trial shall be served not later than 10 days after the entry of the judgment.").

8. Green Tree also argues that final judgment was not entered in the case until April 9,

1998. Even if that were the case, the August 12, 1998, notice of appeal and motion for enlargement of time were not timely because they were filed more than 60 days after April 9, 1998. *See Lussier v. Oxford Dev. Assocs.*, 1997 ME 117, ¶ 5, 695 A.2d 1188, 1189–90; *see also Harris Baking Co. v. Mazzeo*, 294 A.2d 445, 451 (Me.1972).

9. Rule 76D, relating to appeals from the District to the Superior Court similarly contains no requirement that the court of appeal be designated. "The appeal shall be taken by filing a notice of appeal with the clerk of the District Court." M.R. Civ. P. 76D.

ments includes the necessity of specifying the court of appeal. The rule requires that the appealing party "shall specify the parties taking the appeal and shall designate the judgment or part thereof appealed from." *Id.* We have never required that the court of appeal be expressly designated, nor is designation required by any rule or law that is applicable here. Thus, a party who omits the designation of the court of appeal violates no rule or law. Similarly, an incorrect designation does not constitute a failure to comply with any rule or law. Nonetheless, the Court has concluded that a notice of appeal that does not contain a designation of the appellate court is sufficient, but a notice of appeal identifying the wrong court is a nullity.

[¶ 21] I do not disagree with the Court's conclusion that the rules governing the taking of appeals are designed to allow judgments to become final and to allow enforcement within "a brief, fixed time period." *See Town of S. Berwick Planning Bd. v. Maineland, Inc.*, 409 A.2d 688, 690 (Me.1980). Nor do I dispute the need for clarity and finality in the process. I would conclude, however, that when a party files a notice of appeal in the correct court of judgment, and the notice contains the information required by the rule, that

party has put all other parties and the court on notice that an appeal will be pursued. The error in designation of the appellate court does not negate the notice that the party intends to pursue the appeal. Moreover, the error can be corrected with little delay by the clerk's office or by the receiving court.[10]

[¶ 22] It bears repeating that the rules are intended "to secure the just, speedy and inexpensive determination of every action." M.R. Civ. P. 1. The Rules of Civil Procedure should be firmly and consistently applied in pursuit of orderly, predictable litigation. They should not, however, include traps for the unwary by which justice can be summarily truncated. Unless and until the rules or law are amended, after consideration of all of the interests involved, I would hold that an appellant's failure to designate the correct appellate court does not deprive the appellant of the right to have its appeal heard on the merits.

---

10. Recent changes in certain areas of law have resulted in changes in the designated court of appeal for specific types of judgments. *See, e.g.*, 22 M.R.S.A. § 4006 (Supp. 1999) (governing appeals in child protective proceedings). Particularly in areas of family law, these changes may continue. *See* Draft Report of the Court Unification Task Force 17–22 (Sept.1999) (discussing Recommendation II, which suggests the substantial elimination of appeals to the Superior Court in favor of direct review by the Law Court). The confusion resulting from such changes will inevitably lead to errors in the designation of the correct court of appeal.